AMERICAN NATIONAL INSURANCE COMPANY *v.* WHITE.

Opinion delivered December 18, 1916.

1.  TRIAL—CONTINUANCE—DISCRETION.—An application for a continuance is addressed to the sound judicial discretion of the trial court, and the court's ruling will not be a ground for a reversal of the judgment unless there has been a manifest abuse of its discretion.

2.  TRIAL—CONTINUANCE—ABSENT WITNESS—DILIGENCE.—It is the duty of a party wishing to have a certain witness at a trial, to have a subpoena issued and placed in the hands of the sheriff before the day of the trial, and the party will not be justified in relying solely upon his own efforts to locate and procure the attendance of the witness.

3.  TRIAL—CONTINUANCE—ABSENT WITNESS—NECESSARY SHOWING.— A cause should not be continued on account of the absence of a witness, where there is no assurance that if the continuance was granted that the attendance of the witness in person, or his deposition, could be procured.

4. EVIDENCE—CAUSE OF DEATH—VERDICT OF CORONER'S JURY.—In an action to recover on a policy of life insurance, the verdict of a coroner's jury is not admissible as original evidence of the cause of the insured's death.

5. LIFE INSURANCE—PROOF OF DEATH—VERDICT OF CORONER'S JURY.— The insured was killed by being shot; neither the policy nor the by-laws of the insurance company required that the verdict or record of the coroner's inquest be furnished as part of the proof of death; *held*, although such verdict and record were furnished by the beneficiary to the company in an effort to settle the claim, such evidence was not admissible in an action by the beneficiary to recover on the policy.

6. LIFE INSURANCE—CAUSE OF DEATH—VIOLATION OF LAW.—A policy of life insurance provided that the company was relieved from liability if the insured's death was caused by a violation of the law. The insured was killed by being shot. *Held*, it was for the jury to determine whether the insured was shot in cold blood or justifiably, and that the trial court properly refused, under the evidence, to direct a verdict for the defendant company.

7. LIFE INSURANCE—PENALTY AND ATTORNEY'S FEES.—Insured was in arrears a small amount on her policy, which amount was not disputed; *held*, in an action to collect the amount of the policy, after deceased's death, that the inclusion of this amount in the prayer for damages would not bar a recovery for penalty and attorney's fees.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks*, Judge; affirmed.

*Troy W. Lewis*, for appellant.

1.   The court erred in refusing a continuance.   22 Ark. 164; 21 *Id.* 460; 99 *Id.* 399; 71 *Id.* 182; 60 *Id.* 564; 8 Iowa 536; 80 Ky. 480; 1 Yeates, 20; 48 S. C. 1. Due diligence was shown and the court clearly abused its discretion.   10 Ark. 527; 42 *Id.* 273; 85 *Id.* 334; 61 *Id.* 142.

2.   The court erred in refusing to permit defendant to introduce the record of the coroner's inquest. 129 Ill. 557; Kirby's Digest, § 818; 65 Cal. 417; 129 Ill. 557; 168 *Id.* 408; 158 *Id.* 289; 1 Greenleaf on Ev., § 556; Starkie on Ev. 404; 25 Beav. 605; 19 Ohio Ct. Ct. 502; 101 Fed. 206; 41 C. C. A. 307.

3.   The court erred in refusing a new trial for newly discovered evidence.   Kirby's Dig., §§ 6215-6219; 61 Ark. 287; 2 *Id.* 133.   The evidence was not

cumulative.   2 Ark. 346; 11 *Id.* 671; 26 *Id.* 496, etc.
Defendant has alleged and shown facts from which it
appeared that it could not have ascertained such evi-
dence by due diligence.   148 S. W. 271; 25 Ark. 380, etc.
The newly discovered evidence was material.   11 Ark.
671.   It was not cumulative and the motion was sup-
ported by proper affidavit. ' 30 Ark. 723; Kirby's Di-
gest, § 6219.   See, also, 11 Ark. 671; 74 *Id.* 377.   This
court will reverse for refusal to grant a continuance.   80
Ark. 817; 93 *Id.* 346; Cyc. Dig. Ark. Rep. 1, p. 363, §
966; 22 Ark. 164.

4.   The court erred in giving the peremptory in-
structions asked by defendant.   The death was the re-
sult of violating the law and the policy was void.   73
Ark. 274; 18 Dig. Ins. Cas. 186; 68 Fed. 825; 99 Mass.
317; 18 Mo. 109; 19 *Id.* 506; 39 *Id.* 122; 90 Am. Dec.
455; 96 N. Y. 614; 67 Ind. 478; 57 S. W. 614; 99 N. W.
376; 5 Mo. App. 236; 88 *Id.* 633; 98 *Id.* 733; 73 S. W.
923; 96 N. Y. 614; 13 Allen (Mass.) 308.

5.   The court erred in giving plaintiff's instructions
and in reading Kirby's Digest, § 1798.   Also in refusing
to give defendant's instructions 2 and 3, and in assessing
penalty and attorney's fees.   111 Ark. 554; 92 *Id.* 387.

*W. H. Pemberton,* for appellee.

1.   The only question which the jury had to pass
upon was:   Did the assured die as a result of the vio-
lation of law?   The premiums were paid and if the
court's instructions are correct and the finding of the
jury supported by the testimony the judgment should
be affirmed.

2.   The continuance was properly refused.   No
diligence was shown.

3.   The record of the coroner's inquest was prop-
erly refused as evidence.   99 Mass. 325.

4.   There was no error in refusing a new trial on
account of newly discovered evidence.

5.   The law of this case is settled in 73 Ark. 274;
45 N. Y. 422; 13 L. R. A. (N. S.) 258, 262.

6.   The instructions are correct and the penalty and attorneys' fee properly allowed.

HART, J.   In October, 1915, Marie White instituted this action against the American National Life Insurance Company to recover upon a policy of life insurance. The undisputed facts are as follows:

On. February 6, 1914, the insurance company issued an insurance policy in the sum of $500 on the life of Leana Wells, and Marie White, her sister, was named as the beneficiary in the policy.   Between seven and eight o'clock on the night of November 10, 1914, Tillie Clark shot and killed Leana Wells in the city of Little Rock, Arkansas.

One of the provisions of the policy was. that no recovery be had thereunder should the insured "die as the result of a violation of the law, during the first year of the continuance of the policy, and that in such event the liability of the company should be limited to the amount of the premium actually paid thereon."   The policy was in force at the time Leana Wells was killed by Tillie Clark and the company defended this action on the ground that the provision of the policy just quoted was violated.   To sustain its defense, the insurance company introduced evidence substantially as follows: It was shown that Tillie Clark worked at a boarding house in the city of Little Rock and was a small active woman; that Leana Wells was a large woman and that both of them were negroes; that Leana Wells had complained to the proprietress of the boarding house that Tillie Clark was interfering between her and her husband, and that she was going to kill her.

The proprietress of the boarding house testified that she did not think from the way Leana Wells acted that she intended to kill Tillie Clark, but that it was all bluff, like negroes usually engaged in; that Leana Wells was killed a few minutes after she left the boarding house.

E. M. Harrington was the only eye-witness to the killing who testified in the case.   His testimony is sub-

stantially as follows: I stepped out on the front porch of the boarding house in Little Rock, Arkansas, about 7:30 or 8 o'clock on the night of November 10, 1914. As I looked over towards an electric light diagonally across the street, I saw under a large tree possibly twenty-five feet from the corner, two women scuffling, possibly not in anger. A moment afterward they broke away rather hurriedly, and one of them started to run. Just after I noticed them break away, I saw the flash of a gun and at the same time heard a report. It afterward turned out that the smaller of the two women had the gun. The little woman was Tillie Clark and the larger one Leana Wells. The little woman ran across the street and the larger one pursued her and every ten or twelve feet, it seemed that the large woman was getting closer and the smaller woman would turn and fire at her with her pistol. I think the large woman had a stick or something of that kind in her hand. The little woman stopped and turned around and shot the first time or two over her shoulder, but when she shot the other times, she turned and deliberately waited for the larger woman to approach her. She seemed to turn around more deliberately and take a better aim. She fired the first shot when she was about five or six feet away. When she fired the next shot, she was probably 15 feet away from the larger woman. When the smaller woman would run, she would get farther ahead of the larger woman. but when she stopped to shoot, the larger woman would gain on her. Whenever the larger woman was nearer to the smaller one, she would strike at her, but I don't remember that she ever hit her. She was so far away.

The jury returned a verdict for the plaintiff, and the defendant has appealed.

(1) It is first insisted by counsel for defendant that the court erred in not granting it a continuance on the ground of the absence of witnesses whose testimony was material to the defense. The application for continuance was addressed to the sound judicial discretion of the trial court, and the court's ruling will not be a

ground for a reversal of the judgment unless there has been a manifest abuse of its discretion. The continuance was asked on account of the absence of Tillie Clark and a man named Bruck, who, it is claimed, witnessed the killing. It was stated that Tillie Clark would testify to a state of facts tending to show that she acted in self-defense in killing Leana Wells and the particular facts she would testify to were set out in the motion for a continuance. The motion also set out the facts which would be testified to by Bruck and the purport of his testimony was to corroborate that of Tillie Clark. The record shows that Tillie Clark killed Leana Wells on November 10, 1914; that the coroner's inquest was held the next day and that Tillie Clark and Bruck were witnesses. The plaintiff, through her attorney, demanded payment of the policy, and upon being refused, instituted this action on October 9, 1915. The case was duly set down for trial on the 3d day of February, 1916.

(2) The defendant admits that it did not have a subpoena issued for these witnesses until the morning of the trial, but it shows that a law clerk in the office of its attorney had occasion to go about the city of Little Rock collecting, and that on his run he would make inquiries as to the whereabouts of these witnesses, and could not find them. It is also shown that defendant had its agents in the city of Little Rock soliciting insurance, and that these agents made inquiries for the witnesses and failed to find them. It was ascertained about eighteen days after the trial that Tillie Clark was living in the city of Little Rock and had been living there ever since the killing. On the morning of the trial, the defendant's attorneys learned that the witness, Bruck, had gone first to the Isthmus of Panama and later to some place in South America and the attorneys' informant told him that he believed that by writing to the witness's former address in Panama that he would be able to find his present address in South America. Under this state of facts we do not think the court abused its discretion in refusing to grant a continuance. In regard to the witness, Tillie Clark, it may be said she

had during the whole time been living in the city of
Little Rock. It is true the defendant states that its
agents made a search for her and were not able to find
her. This is not sufficient. A subpoena should have
been issued and placed in the hands of the sheriff for
service. A party to an action can not usually claim that
he has used due diligence in procuring the attendance
of a witness by his own efforts merely to locate the wit-
ness. It is true it is his duty to notify the officer where
the witness is if he knows the witness' residence and
the officer does not. In the present case due diligence
required that a subpoena be issued and placed in the
hands of the officer at an earlier date than the morning
of the trial. It is the duty of the sheriff to ascertain if
the witness is in his county, and to serve the process on
him. He has facilities for finding people not possessed
by the ordinary citizen, and that is one of the reasons
why it is made his duty to serve the process issued by
the court. As we have already stated, the case was
duly noted for trial, and it can not be said that the sher-
iff could not have found a witness whom the proof
showed to have resided all this time in the city of Lit-
tle Rock.

(3) In regard to the witness, Bruck, it may be
said that there is no reasonable assurance that, if the
continuance had been granted, his testimony could
have been procured by deposition or otherwise at the
next term of the court. The defendant had merely been
informed that he was somewhere in South America,
and that his address might be found out from persons
who knew him at his former address in Panama. This
showing was too indefinite and we do not think the
court abused its discretion in refusing to grant the con-
tinuance. After Tillie Clark was found, a motion for
new trial was filed on the ground of newly discovered
evidence. What we have said above, disposes of this
point, and we do not think the court abused its discre-
tion in refusing a continuance on that account.

(4) The next assignment of error presents the
question of whether the verdict of the coroner's jury

was admissible as original evidence of the cause of the
insured's death. This question has never been decided
by this court. In the case of *Grand Lodge A. O. U. W.
v. Banister*, 80 Ark. 190, the court said that it had no
hesitancy in holding that the verdict of the coroner's
jury does not make out a *prima facie* case of death from
the cause stated in the verdict, but at most could only
be considered by the trial jury along with the other tes-
timony in the case. The court held, however, that in-
asmuch as the verdict of the coroner's jury was intro-
duced at the request of appellant, it was unnecessary
to decide whether or not it was competent evidence.
The court said that the weight of authority seemed to
be against the admissibility of such evidence in civil
cases of this kind, and a number of authorities on both
sides of the question are cited in the opinion. There
are authorities sustaining the admissibility of such rec-
ords at the common law. "The law gives such high
credit to an inquisition of death, found before a coroner,
that anciently the judges would not receive a verdict ac-
quitting a person of the death of a man found against
the accused by the coroner's inquest, unless the jury
finding such acquittal had also found what other person
did the act, or by what other means the party came
to his death, because it appeared by the coroner's view,
on record, that a person was killed." 2 Bac. Abr. 431.
Under our statute, the coroner's jury makes an *ex parte*
investigation of the supposed crime resulting in homicide
for the purpose of aiding in the administration of the
criminal laws of the State. Other persons having prop-
erty interests depending upon the cause of the death
are not allowed to participate in the hearing before the
coroner's jury with a view to establish rights by the
verdict. While the coroner's inquest is made on behalf
of the State, and a record of it is required to be made and
kept, it can not on any well grounded principle of Amer-
can Common Law become evidence in another suit as
to the cause of the death investigated. There is no
good reason why a stranger to the proceedings should
be in any wise bound by the verdict or that it should

be evidence against him of the cause of the death. If such verdict be admissible as evidence, it follows from its very nature that it might also constitute proof of the main fact and of every essential fact in issue. It might not only show the fact of death by violent and external means within a day covered by the policy, but might also find that the person slaying the insured was justified or was not justified in killing him. In either event a property right of one or the other litigants would be determined by a verdict of which no notice was given to him and without an opportunity to cross-examine the witness whose oaths established it. He would be deprived of his property without due process of law; for the first verdict might be sufficient to maintain the action or sustain the defense, as the case might be, if it was the only evidence offered or obtainable, and thus the verdict of the trial jury would be merely a formal ratification of the coroner's verdict. We can not see any well grounded reason why such a verdict should be evidence against a stranger to the proceedings. In addition to the authorities cited in the *Banister case,* see *Aetna Life Insurance Co.* v. *Milward,* 118 Ky. 716, 4 A. & E. Ann. Cas. 1092; *Cluff* v. *Mutual Benefit Life Ins. Co.,* 99 Mass. 325.

(5) Again, it is insisted that the verdict of the coroner's jury and the testimony of witnesses taken at the coroner's inquest should have been introduced in evidence because a copy of the same was furnished defendant as a part of the proof of death made out by the plaintiff and authorities are cited in support of their contention. We think, however, this proposition is decided against the defendant by the principle announced in the case of *Fidelity & Casualty Co.* v. *Meyer,* 106 Ark. 91. In that case it was held that where a life insurance policy contained no provision for a waiver of privilege, and no physician's certificate was necessary as part of the proof of death, there was no waiver by the furnishing as part of the proof of death to the insurer a certificate of the attending physician in a voluntary attempt to secure a settlement. There was no provision

in the policy requiring the verdict of a coroner's jury, and the testimony taken at the inquest to be furnished to the insurance company as a part of the proof of death. The question of the death of the insured is not an issue in this case. The undisputed evidence shows that she was killed by Tillie Clark. The only issue of fact in the case was whether or not Tillie Clark was justifiable in killing her.

The rule is that where by the terms of the policy, the record of a coroner's inquest is required to be attached to proofs of death made by the beneficiary or his agent, such record is admissible upon the trial of a case upon the ground that it contains admissions of the beneficiary against his interest as to the cause of death. No such rule of evidence obtains, however, where the terms of the policy or the by-laws of the company do not require the verdict or record of the coroner's inquest to be furnished to the company as part of the proof of death. In cases like this the proof of death is made in an effort to settle the loss without a suit, and it has no connection whatever with the trial where the company refused to make payment.

The rule contended for can have no application where the record of the coroner's inquest is not furnished pursuant to the requirements of the policy, but merely as a voluntary act in an effort to secure a settlement. Any other rule could hardly fail to be conducive of abuse or injustice.

(6) It is next earnestly insisted by counsel for defendant that the court erred in refusing to direct a verdict for the defendant. In the case of the *Supreme Lodge of Knights of Pythias* v. *Bradley*, 73 Ark. 274, the court held: "A death received while retreating from a personal difficulty in good faith, and not for the purpose of gaining a vantage ground to renew it, although deceased began the assault with a weapon capable of inflicting great bodily harm, was not a death received while in violation of any criminal law, within a policy of insurance providing that if the assured's death should be received in a violation or attempted viola-

tion of any criminal law, then the amount to be paid on the policy should be in proportion to the whole amount as the matured life expectancy is to the entire expectancy at date of admission of such member."

In the opinion the court quoted from the case of *Bradley* v. *Insurance Co.*, 45 N. Y. 422, as follows: "So long as the evidence falls short of establishing that the homicide was legally justifiable, I can see no safe rule by which the court could be guided in deciding that the provocation proved was the cause of the killing, and in withdrawing that question from the consideration of the jury."

The effect of the holding is that where the evidence is conflicting as to whether the homicide was legally justifiable or was the result of malice or excessive violence on the part of the stranger the question of proximate cause and the adequacy of the provocation is for the jury.   In a case note to 13 L. R. A. (N. S.), at page 262, the rule is stated as follows:

"A personal encounter between the assured and his slayer has been the cause of the greater number of cases in which has arisen the question whether the assured's death was within the exception of a policy relieving the insurer if the death was caused by a violation of law.  In such cases it may be laid down as a generally accepted rule that, if the assured's adversary is guilty of unjustifiable homicide in killing the assured, the latter's death is not within the exception; while, on the other hand, if the assured is slain under such circumstances as render the killing justifiable homicide, there is a violation of law on the part of the assured within the exception."

Tested by this rule of law it can not be said that the court should have directed a verdict for the defendant.   We do not deem it necessary to review the evidence, but consider that a mere reading of it is sufficient.  We need therefore only refer to it as set out in the abstract.

Finally it is insisted that the court erred in allowing an attorneys' fee and penalty as provided in the statute.

(7)    When the insured was killed, she was in arrears in the sum of $3.90 on her premiums, and this amount, according to the terms of the policy, should have been deducted from the amount of the policy. The jury found for the plaintiff for the face of the policy less $3.90.   This was an insignificant sum, and doubtless, if the plaintiff's attention had been called to it, she would have amended her complaint so as not to ask for that sum.   It is obvious that plaintiff only contended for the amount due her under the policy, and that by the terms of the policy the company had a right to deduct the $3.90 from the face of the policy. The $3.90 is such an insignificant sum compared with the face of the policy that it is evident the plaintiff, by mistake, did not deduct it from the face of the policy in her complaint.   It was conceded throughout the trial that the $3.90 was not in issue.   If the insurance company desired to avoid the penalty and attorney's fees, it should have offered to confess judgment for the amount of the policy, less the $3.90; and not having done so, the court properly allowed the attorney's fees and penalty provided for in the statute.   *Great Southern Fire Ins. Co.* v. *Burns & Billington*, 118 Ark. 22.

We have not overlooked the assignments of error in regard to the giving of instructions relied upon for a reversal of the judgment; but we do not deem it necessary to set them out or to review them here.   It is sufficient to say that the instructions given by the court were according to the principles of law laid down in this opinion and fully and fairly presented the respective theories of the parties to the jury.

The judgment will be affirmed.