LIFE & CASUALTY COMPANY *v.* SANDERS.

Opinion delivered March 21, 1927.

1. INSURANCE—FRAUDULENT SETTLEMENT—EVIDENCE.—In an action to recover weekly benefits under health and accident policies, evidence *held* to make it a jury question whether insurer's agent made false representation to get insurer to surrender the policies and accept a small sum in full satisfaction.

2. EVIDENCE—COMPETENCY.—In an action on health and accident insurance policies, it was proper to exclude the testimony of a physician that he had examined a specimen of blood supposed to be that of the insured where the witness was unable to testify positively that the specimen examined was taken from the insured.

3. INSURANCE—PENALTY AND ATTORNEY'S FEE.—In an action to recover weekly benefits under health and accident policies, where the insured denied any liability, it was not error, after verdict for the plaintiff, to assess the statutory penalty and an attorney's fee, where the court permitted plaintiff to amend his complaint at the conclusion of the testimony of plaintiff's first witness, thereby reducing the claim to the amount for which the jury returned a verdict.

4. PLEADING—DISCRETION TO PERMIT AMENDMENTS.—Generally, it is within the trial court's discretion to permit a complaint to be amended during the trial or at the close of the testimony to conform to the proof.

Appeal from Pulaski Circuit Court, Third Division; *Marvin Harris,* Judge; affirmed.

*Isgrig & Dillon,* for appellant.

*Longstreth & Longstreth* and *J. A. Weas,* for appellee.

McHANEY, J. This is an action by appellee against appellant to recover weekly benefits accruing to him under two policies of health and accident insurance, providing for a total indemnity of $8 per week, issued by appellant to him. The policies were issued by appellant in 1918, and the premiums thereon were paid for several years. In his original complaint he alleged that he had become totally disabled in July and continued so between August 1, 1923, and the date of bringing this suit, a total of seventy-nine weeks, for which he had not been paid, as provided in said policies, making a total of $632, for which he asked judgment.

Appellant denied liability on the ground, first, under a provision of the policy wherein it is provided "that, should sickness begin prior to the date of said policy, or be caused by intemperance, immorality or venereal disease, no payments will be made"; that appellee, at the time of the delivery of the policy, had a venereal disease, syphilis, from which he is still suffering; and, second, that on January 29, 1924, they paid him a small sum under each of said policies, which was accepted by him in full satisfaction of his claim against it, and that this payment amounted to a settlement in full for all liability thereunder.

The case was tried before a jury, under instructions which are not complained of by appellant, except its request for a directed verdict in its favor, which the court refused, and the jury returned a verdict for plaintiff in the sum of $468.70, to which amount the court added $125 as attorney's fee, and the twelve per cent.

penalty provided by law. Thereafter appellant filed a motion for a new trial, which was overruled, and it has appealed to this court.

Appellant's first contention is that the court should have instructed a verdict in its favor, ''unless the release or contract of settlement, signed by the appellee, was void for the reasons as alleged in the complaint and pleadings of appellee.'' The complaint alleged that the settlement was procured from appellee through false and fraudulent representations and statements of appellant's agent, and that it was therefore void. Appellant testified that he is a negro, is married, and has been living with his wife as husband and wife about thirteen years; has never had syphilis or any other venereal disease, and has not now; that he is now totally disabled, and has been since July 11, 1923; that the agent of the company came to him and wanted him to settle with them; ''they told me we just as well get the money, they wasn't going to pay me no more''; that the doctor had reported he had syphilis; that he didn't know the doctor had reported he had syphilis, as the doctor had never told him that he had syphilis.

''Q. Why did you accept the money and make these settlements? A. Well, just because I didn't want to be bothered with them. They kept worrying me to death. Of course I knew I didn't have syphilis. The agent said I just as well take it because they were not going to pay me any more claims, whether I had syphilis or didn't.''

His wife, Millie Sanders, testified with reference to this settlement to substantially the same things testified to by her husband, and, in addition, she said that, when the agent told her her husband had syphilis, she asked him who said so, and he said ''That is what the blank shows.'' She further said that she told the agent that they had paid her five claims, and she wanted to know the reason they wouldn't pay her, and he told her that her husband had syphilis. Further, that she accepted the money after he wouldn't receive money on the policies, making the policies lapse, and that is another

reason why she made the settlement, that they wouldn't take the premiums, and said the policies would lapse and she wouldn't get anything, so she settled with them.

Dr. E. H. White testified that he made a blood examination of appellee for syphilis, and found that he didn't have it. Several other doctors testified that plaintiff did not have syphilis. There appears in the bill of exceptions the statement of Dr. Oscar Gray, the physician who examined him on his application for sick benefits, and on the form required by the company, in which he stated that the appellee was suffering with paralysis and strangulated hernia, and, in answer to question 10, "Is disease venereal or of venereal origin?" he answered "No."

There was sufficient testimony in the record therefore to go to the jury on the question of whether appellant's agent made false and fraudulent representations to the appellee in getting him to surrender his policies and accept a small settlement in full satisfaction thereof.

He made the statement to both appellee and his wife that appellee had syphilis; that the doctor in his report had so stated, and that the company wouldn't pay any benefits for this reason; that they would not accept any more premiums, and that the policies would lapse.

It is undisputed that appellee relied upon these statements and accepted a nominal sum in settlement thereof, and we think the court properly submitted this question to the jury, and that appellant's request for a directed verdict was properly denied.

It is next insisted that the court erred in excluding the proffered testimony of Dr. Gebauer, to the effect that he had examined a specimen of blood, supposedly that of appellee, Harris Sanders, and found it to be "2 plus Wasserman positive," showing that appellee was afflicted with syphilis. But the witness was unable to testify that the specimen examined was taken from appellee. He said that probably ninety per cent. of their specimens were taken by him, but that he is not positive whether, in this case, he took the specimen himself or whether

Dr. Judd took it and delivered it to witness. The court properly excluded the proffered testimony, for the reason appellant failed to show that the specimen examined was that of appellee.

It is finally insisted that the court erred in assessing the twelve per cent. penalty and attorney's fees, because the court permitted appellee to amend his complaint, over appellant's objection, at the conclusion of the testimony of witness Dillingham, manager for appellant, who was appellee's first witness, and thereby reducing the amount claimed from $632 to $468.70. Generally it is within the discretion of the court to permit the complaint to be amended during the trial or at the close of the testimony to conform to the proof. *Duff* v. *Ayers,* 156 Ark. 17, 246 S. W. 508. But it is urged that, having brought suit and gone to trial on a demand for more than justly due, appellee could not amend his complaint by reducing the demand to the correct amount, and recover the statutory penalty and attorney's fees in addition thereto. We do not agree with appellant in this contention. If, instead of proceeding with the trial of the case and denying any liability whatever on the grounds here urged, it had either offered to pay the reduced amount, or had asked to be given the time in which to pay same as provided in the policies, appellee could not have recovered the penalty and attorney's fees, and, in addition, would have been required to pay all costs, for the reason that he demanded a sum greater than he was entitled to under the policies.

In *Queen of Ark. Ins. Co.* v. *Milham,* 102 Ark. 675, 145 S. W. 540, appellee brought suit on the policy, and appellant answered, denying that it owed him the amount claimed, and set up a breach of certain conditions of the policy. Later it amended its answer, in which it said that appellee owed it the sum of $12 and interest on a note given for a part of the premium for the policy sued on, and asked that the same be allowed as a credit or set-off against any amount that might be found to be due appellee. Appellee then filed an amendment to his complaint,

in which he admitted that he owed the appellant the premium note of twelve dollars and interest, and asked for judgment in the sum of $423.36 as the amount sued for.'' The jury returned a verdict for this amount, and the court allowed the twelve per cent. penalty and attorney's fees. On appeal the only question raised was the error of the court in assessing the penalty and attorney's fees under the statute, and, in disposing of the case, this court said: ''When appellant filed its amended answer and claimed as a set-off the amount due it by appellee on the premium note, appellee at once conceded that the amount should be deducted from the amount sued for in his original complaint, and only asked judgment for the difference, which was $423.36. If appellant wished to avoid the penalty and attorney's fee provided for in the statute, it should have offered to confess judgment for that amount, and thus have ended the suit. It did not do so, but elected to go on and contest the claim of the appellee on other grounds, and thereby became liable for the penalty and attorney's fees provided for in the statute when appellee recovered the amount sued for.'' *Great Southern F. Ins. Co. v. Burns & Billington,* 118 Ark. 30, 175 S. W. 1161; *Queen of Ark. Ins. Co. v. Milham,* 102 Ark. 675, 145 S. W. 540; *Queen of Ark. Ins. Co. v. Bramlett,* 103 Ark. 1, 145 S. W. 541; *Am. Natl. Ins. Co. v. White,* 126 Ark. 494, 191 S. W. 25.

The jury returned a verdict for the sum demanded, $468.70, and the court properly assessed the penalty and attorney's fees. No error appearing, the judgment is affirmed.

SMITH, J., dissents in part.