UNIVERSAL SECURITY INS. CO. *v.* ZAMBIE.

5-3690                                    396 S. W. 2d 842

Opinion delivered December 13, 1965.

*Roscopf & Raff,* for appellant.

*Mike J. Etoch, Jr.,* for appellee.

CARLETON HARRIS, Chief Justice. The question on this appeal is whether appellee was entitled to the statutory penalty and attorney's fee. Henry Zambie, appellee herein, purchased a 1964 Buick Skylark on February 29, 1964, and insured the automobile for the full purchase price, less a $50.00 deductible clause, with appellant, Universal Security Insurance Company. Thereafter, on July 22, 1964, the aforementioned Buick was struck by another car, and damaged extensively. On September 11,

1964. Zambie filed his complaint against the appellant insurance company, asserting that his Buick Skylark was insured for the sum of $3,734.39 with a $50.00 deductible clause; that the automobile "was struck from the side by another car, caving in the entire right side, and bending the frame of the car inward about a foot." It was further asserted that the Buick was so damaged as to make it a total loss except for salvage, and that salvage value was approximately $1,100.00. Appellee also alleged that numerous demands had been made upon the company to comply with the contract, "by either providing the plaintiff with a car of like kind and quality, or paying the value thereof," but that the company had steadfastly refused to perform the provisions of the contract. Judgment was sought in the amount of $3,734.39, plus the statutory 12% penalty, and attorney fees. On September 22, the company filed its answer, admitting that it had issued a policy of insurance to appellee, but expressly denying every other material allegation. On October 31, appellee amended his complaint, wherein he asserted that his automobile had an actual cash value of $3,285.00, but was a total loss except for salvage; judgment was sought for $3,235.00, or in the alternative, $3,235.00, less the salvage value of the car. On November 4, the company filed a motion to require Zambie to "make demand for the difference between the contended actual cash value of the car immediately prior to the collision, and the contended actual cash value of the car immediately after the collision." The motion set out that appellee's amended complaint was so vague and ambiguous that the company could not reasonably be required to prepare an answer. On the same date, appellant also moved to strike that portion of appellee's prayer which sought judgment for the 12% statutory penalty, and the attorney's fee. The company set out that Zambie had never made demand upon it for the difference between the contended actual cash value of the vehicle just prior to the collision, and the contended actual cash value of the vehicle immediately after the collision; that the company had not been put on notice as to the specific monetary

demand in the case. On November 9, appellee responded to this motion, as follows:

"That at the time of the collision, the actual cash value of the 1964 Buick Skylark covered by the policy was $3,285.00.

"That following the accident the value of the car was $1150.00.

"That the plaintiff has in the past and still does demand that the defendant, pursuant to the policy, pay the plaintiff the sum of $3235.00, which is the actual cash value less the $50.00 deductible. Or in the alternative that the defendant pay the plaintiff the sum of $2085.00, which is the actual cash value less the salvage value and the $50.00 deductible. Both figures are exactly the same, the only difference being that the former figure leaves the salvage with the insurance company and the latter with the insured."

Thereafter, on November 16, the company moved the court to make General Motors Acceptance Corporation a party plaintiff because of the fact that that company held a lien upon the Buick automobile, and on the same date the company filed a pleading entitled, "Answer to Amended Complaint or Answer to Motion to Make More Definite and Certain." This pleading reads as follows:

"Prior to the filing of such amended complaint on November 6, 1964, defendant was not apprised as to the amount of the claim being asserted by the plaintiff for damages to the automobile. That after the filing of such amended complaint it is now apprised that the claim of the plaintiff amounts to the sum of $2,085.00. That the defendant has never denied the claim of the plaintiff nor has it ever refused to pay same for the reason that the amount of such claim was unknown to the defendant.

"WHEREFORE, defendant acknowledges the claim of the plaintiff as set out in such amended complaint in the amount of $2,085.00 and tenders herewith into the Court such sum of money in full payment of the claim

of the plaintiff, and, does specifically deny any responsibility for the payment of the statutory penalty and attorney's fees based upon the above allegations.''

On March 5[1] the court entered judgment for appellee against appellant in the amount of $2,085.00, plus 12% penalty, amounting to $241.20, and an attorney's fee in the amount of $500.00, being a total judgment of $2,826.20. From that portion of the judgment awarding the statutory penalty and the attorney's fee, appellant brings this appeal. For reversal, it is first urged that appellee is not entitled to the penalty or attorney's fee for the reason that appellant promptly confessed judgment for the amount sued for in the amended complaint. Further, appellant asserts that there is no substantial evidence to support the finding of the trial court that $500.00 is a reasonable attorney's fee in this case. Under the view that we take, there is no necessity to consider this last point.

We think, under our holdings, that appellant's argument contains merit, and appellee is not due to recover penalty and attorney's fee for the reason that he originally sought more than he finally recovered, and when his claim was reduced to the amount for which he later received judgment, appellant, within a reasonable time, proffered this amount to him. As earlier stated, Zambie originally sought the amount of $3,734.39, less the $50.00 deductible. Salvage value of the wrecked car was alleged to be $1,100.00. In his first amendment to the complaint, appellee sought $3,285.00. Finally, on November 9, appellee asked for the sum of $2,085.00, alleging that the salvage value of the automobile was $1,150.00. As mentioned, this was the amount that the appellant company, on November 16, tendered in full payment of appellee's claim.

Obviously, the amount finally accepted was less than that originally sued for, but appellee argues that he, in

---

[1] Apparently, no testimony, exhibits, or other evidence was offered to the court by either party, as only pleadings and orders appear in the transcript. The decision was based upon these pleadings and memorandum briefs filed on behalf of the litigants.

the beginning, submitted an alternative, *i.e.*, that he be given "a car of like kind and quality," and he states that the amount offered by the company, and accepted by him, was equivalent to this demand. We do not agree that this type of demand entitles appellee to penalty and attorney's fee. We think the statute contemplates a claim for a specific amount of money. Certainly, "a car of like kind and quality" is a matter wherein reasonable men could differ—and probably would. It would be exceptionally remarkable if an automobile could be found that would be exactly of the value as the damaged car, for mileage would differ, the condition of the tires would vary, the appearance of the car would likely be different, and numerous other items would likewise be divergent. It is evident that an owner and an insurance company could haggle for some period of time on the question of whether the car offered to replace the damaged vehicle was of "like kind and quality."

There is an equally important reason why a demand for another car is not a demand for a definite amount of money. As stated in the Pennsylvania case of *Alliance Discount Corp.* v. *Shaw,* 171 A. 2d 548:

"The observation by the court below, in its opinion, is well put. 'It is indeed questionable whether there is a "recognized market" for used automobiles. No other article of commerce is subject to more erratic vacillation in pricing procedures. The so-called "red book" purporting to fix prices of various makes and models of automobiles in accordance with their year of manufacture is adopted for the convenience and benfit of dealers and is not based on market prices which are arrived at in the open, based on asking prices of sellers and bids of prospective buyers.' "

Appellee, in his brief, states:

"In this case Appellant had numerous opportunities prior to filing of suit to pay an amount less than it later confessed judgment to. This is pointed out in the original complaint and amended complaint wherein Appellee states he offered on numerous occasions to accept a

car of like kind and quality or the cash value of the one he lost.''

Appellee also asserts:

''On November 4, 1964, Appellant filed two motions. The first motion was to strike all and each part of Appellee's amended complaint, and the second motion was for appellee to make his amended complaint more definite and certain, particularly as to the salvage value.

''On November 6,[2] 1964, Appellee answered the motion to make more definite and certain by stating that One Thousand One Hundred and Fifty Dollars ($1,-150.00) was the present salvage value.

''On November 9, 1964, the Appellant requested a pre-trial on the case at which time he argued both motions and was ruled against on both motions. Appellee then asked for the court to set a trial date and Appellant moved that it be continued until the next term of court for the reason it hadn't had sufficient time to have the damaged car appraised. The court overruled this motion and set the case for trial on November 18, 1964.

''Following the case being set for trial the attorneys again discussed settlement to no avail and on November 16, 1964, less than two days before trial Appellant filed an amended answer admitting liability for the full Two Thousand Eighty-five Dollars ($2,085.00). * * *''

Further:

''On November 18, 1964, the date set for trial, the Appellant requested that the question of attorney fees and damages be heard on briefs. This request was granted and both parties submitted briefs to the court with statements of facts.''

The alleged facts, set out in appellee's brief, would, under proper circumstances, be pertinent matters for consideration, for, if no offer had been made by the company until two days before trial, it is apparent that coun-

---

2 The record reflects that this pleading, though dated November 6, was filed on November 9.

sel would have been forced to spend time preparing his case as a matter of being ready on the trial date. However, *these matters do not appear in the transcript.* We have stated repeatedly that, in determining litigation, we can only consider the record, and statements in an attorney's brief "outside" the record cannot be given any weight. The transcript in this case does not reveal anything at all concerning negotiations prior to the filing of the suit; further, there is nothing in the transcript to show that a pre-trial conference was ever held; still further, the record does not reveal that the case was set for trial on November 18, or that the appellant tendered the $2,085.00 "two days before trial." The court entered its judgment on March 5, 1965, finding that appellant company was indebted to appellee in the amount of $2,085.00, and was liable, in addition, to appellee for a 12% penalty and a reasonable attorney's fee.

Appellee asserts that, to avoid penalty and attorney's fee, the company was required to tender into court the amount sued for, *plus interest and costs,* to date of tender, and cites *Broadaway* v. *The Home Insurance Company,* 203 Ark. 126, 155 S. W. 2d 889. In that case, suit was filed by the claimant for an amount less than he had previously demanded. The company tendered this amount into court, together with interest and costs. In holding that the claimant was not entitled to penalty and attorney's fee, this court said:

"If the insured files suit for less than the minimum demand he has theretofore made under his policy, the insurance company has the right to tender into court and confess judgment for the amount sued for and be relieved of liability for the attorney's fees and penalty provided in the above statute. The insured cannot file suit for an amount less than theretofore demanded and collect the statutory penalty and attorney's fee if the insurance company in apt time, as is the case here, offers to confess judgment and tenders into court the amount sued for, plus interest and costs to the date of tender."

The court pointed out that the case was controlled by *National Fire Insurance Company* v. *Kight*, 185 Ark. 386, 47 S. W. 2d 576, where the circumstances were practically the same. However, the *Broadaway* case leaves out a citation that is mentioned in the *Kight* case. On the last page of the latter opinion (390) we said:

"In *Life & Casualty Co.* v. *Sanders*, 173 Ark. 362, 292 S. W. 657, we held that the plaintiff could reduce his demand by amendment to the complaint after the trial had started and still recover the penalty and attorney's fee. We there said: 'If, instead of proceeding with the trial of the case and denying any liability whatever on the grounds here urged, it [the insurance company] had either offered to pay the reduced amount, or had asked to be given the time in which to pay same as provided in the policies, appellee could not have recovered the penalty and attorney's fee, and, in addition, would have been required to pay all costs, for the reason that he demanded a sum greater than he was entitled to under the policy.' "

The United States Court of Appeals for the Eighth Circuit has also construed our holding as allowing the insurer to tender into court the amount sued for, and by confessing judgment, to be relieved of the penalty and attorney fees. *Trinity Universal Insurance Company* v. *Smithwick*, 222 F. 2d 16. There seems to be, to some extent, a conflict in the cases, possibly occasioned by the fact that the *Broadaway* case did not include the quotation taken from *Life and Casualty Company* v. *Sanders*, which was mentioned in the *Kight case*. Our earlier cases make no mention of interest and costs. In *Queen* v. *Ark. Ins. Co.* v. *Milham*, 102 Ark. 675, 145 S. W. 540, in an opinion by Mr. Justice Hart, this court said:

"When appellant filed its amended answer and claimed as a set-off the amount due it by appellee on the premium note, appellee at once conceded that the amount should be deducted from the amount sued for in his original complaint, and only asked judgment for the difference, which was $423.36. If appellant wished to avoid the penalty and attorney's fee provided for in the

statute, it should have offered to confess judgment for that amount, *and thus have ended the suit*.[3] It did not do so but elected to go on and contest the claim of the appellee on other grounds, and thereby became liable for the penalty and attorney's fee provided for in the statute when appellee recovered the amount sued for."

See also *Great So. F. Ins. Co.* v. *Burns & Billington*, 118 Ark. 22, 175 S. W. 1161. In resolving these possible inconsistencies, we think logic dictates that when a demand for the sum (subsequently received by the claimant) is first made, and the company, within a reasonable time, tenders that amount, there can be no valid reason to require the company to pay interest and costs. We have said numerous times that the company is not to be penalized for refusing to pay an excessive demand, and certainly, it would be unjust to require the payment of interest and costs when it has not been at fault. The statute itself mentions only penalty and attorney's fee.

The question in this litigation thus finally narrows to whether appellant company, in tendering the money one week after appellee made his offer, acted with diligence, and within a reasonable time. We are of the view that this question must be answered, "Yes." Of course, in most instances, it is necessary that an attorney contact his client, communicating any offers to the company, and he cannot act until receiving a reply. Frequently, he must get in touch with the home office, which may well be located in another state, and we do not feel that we can say that a delay of one week in denoting acceptance is normally an unreasonable delay; we find nothing in this record to establish that appellant was merely acting dilatorily.

In accordance with the views herein expressed, that portion of the judgment allowing penalty and attorney's fee is reversed, set aside, and held for naught.

It is so ordered.

---

[3] Emphasis supplied.