OLD AMERICAN INSURANCE COMPANY *v.* HARTSELL

Opinion delivered March 19, 1928.

1. INSURANCE—HEALTH OF INSURED AT ISSUANCE OF POLICY.—Evidence *held* insufficient to show that insured was not in good health when the policy was issued, where the only evidence was the failure of insured's attending physician, who first saw him more than a month after the policy was issued, to answer the question whether insured was considered a good insurable risk on the date the policy was issued.

2. INSURANCE—BURDEN OF PROOF AS TO INSURED'S HEALTH.—In an action on a life insurance policy, evidence that the premiums were paid, the policy delivered, and the proof of death made, established a *prima facie* case, placing the burden on defendant to show that insured was not in good health when the policy was delivered.

3. INSURANCE—EVIDENCE OF INSURED'S GOOD HEALTH.—In an action on a life insurance policy, evidence *held* to support a finding that insured was in good health when the policy was delivered.

4. INSURANCE—PENALTY FOR NONPAYMENT.—The provisions of Crawford & Moses' Dig., § 6155, imposing a penalty on insurer for failure to pay a loss within the time specified in the policy, applies to a company governed by Acts 1925, p. 390.

5. CONTINUANCE—ABSENT WITNESS.—It was not an abuse of discretion to deny a motion for continuance for the absence of a witness who had been subpoenaed, where there was no showing as to the location of the witness or as to when or where he might be found.

Appeal from Monroe Circuit Court; *W. J. Waggoner,* Judge; affirmed.

*John L. Crank,* for appellant.

*F. C. Nolen,* for appellee.

SMITH, J. This is a suit by Clara E. Hartsell, as the beneficiary named in a policy of insurance issued by the appellant insurance company on December 29, 1925, on the life of her husband, John T. Hartsell, in the sum of one thousand dollars. The complaint alleged the issuance of the policy, the payment of the premiums, the death of the insured, and the proof of loss, and prayed judgment for the amount of the policy, with the statutory penalty and attorney's fee, as the company had denied liability.

An answer was filed, in which the company admitted the execution of the policy, the payment of the premiums

thereon, and that proof of death had been made, but denied liability upon the ground that the issuance of the policy had been procured through the false representations of the insured that he was in good health at the time of the issuance and delivery of the policy to him, whereas he was an invalid, and was aware of that fact.

The policy sued on was issued without a medical examination being previously required, but the insured was required, as a condition precedent to the issuance of the policy, to warrant that his health was good at the time of the delivery of the policy. This he did in the application, which contained the following recitals:

"Knowing that my age and insurability will be determined by the company by the answers and statements above made by me, as no medical examination is required of me by the company for determining such facts, I hereby state that I have, before signing this application, read or had read to me each of the foregoing answers and statements, and I state that each of such is unqualifiedly true. I therefore warrant that each answer and statement reflects an existing fact and that the company may rely upon them to such extent. I agree that, in the event any such answer be discovered to be erroneous or false, or, in the event any such statement be discovered to be erroneous or false, even though such be deemed immaterial by me or the beneficiary, then, in either event, this policy shall stand canceled as of the date of its issuance, and this regardless of the date of the discovery of such breach. I further warrant that the statements and answers above set forth are complete, and that I have made no statement or answer touching upon any of the above questions or statements to any agent of the company except as above set forth, and I hereby bind myself and beneficiary to the truthfulness of this warranty; and further, I agree that the policy to be issued on this application shall not be in force or effect until and unless it be delivered to me while I am in good health and alive. In the event I should become

ill or die between the date of this application and before such delivery of the policy to me, then it is agreed that any premium paid with the application shall be returned to me or my legal representatives, the application to be treated as withdrawn.''

The answer alleged that the insured was not in good health when he made his application, nor when the policy was delivered, which facts were well known to the insured, and that the policy was therefore fraudulently obtained.

The insured was an active soliciting agent of the appellant company, and sent in his own application, and received his policy directly from the company.

Under the admissions of the answer the plaintiff introduced the policy and rested, whereupon the defendant called appellee as a witness. She admitted signing the following statement, which was offered in evidence:

''April 14-26, as to John T. Hartsell. Moved to Brinkley in Jan. 1926. Was sick 2 weeks. Died 16 Feb. Week with flu and week with pneumonia. Rented from Mr. Cooper house No. 4 in Brinkley and lived there all time we paid rent. Bad cold about Dec. 1 developed in flu and pneumonia. (Signed) Clara E. Hartsell, wife of John T. Hartsell.''

She explained this writing by stating that it was prepared by an agent of the company after the proof of death had been made, and that it was not read to or read by her, and she was unaware, when she signed the statement, that it recited that the insured had a bad cold about December 1 which developed ''in flu and pneumonia,'' and that the fact was that the insured was sick for only two weeks immediately preceding his death; that he had the influenza, which developed into pneumonia, and this caused his death, and that his illness extended over a period of only two weeks.

The defendant company offered in evidence the certificate of the physician who attended the insured in his last illness. In the blank furnished the physician for the purpose of making this part of the proof of death, the following question, among others, was asked:

"No. 12. From your knowledge of the deceased, would you have considered him a good insurable risk on the 29th day of December, 1925?"

The blank space following this question contained no answer. It is alleged that the failure to answer this question is, in effect, equivalent to the statement that the physician did not think the insured was in good health on December 29, 1925. We do not think so. The physician was not called as a witness, and, in answer to another question in the proof of death blank, the physician stated that he saw the deceased for the first time on February 9, 1926; that the duration of the illness was two weeks, and that deceased died February 16, so that the insured had been ill a week when the physician first saw him.

There was no other testimony tending to show that the insured was not in good health when the policy was delivered to him, except that of a clerk in the home office of the company, who testified that the insured had sent in no application for insurance after the middle of December, except his own.

Upon this record the court charged the jury, in view of the admissions contained in the answer, that the burden was on the defendant to show that the insured was not in good health at the time the policy was delivered.

We think this instruction was correct, as a *prima facie* case was made when it was admitted that the premiums on the policy had been paid, that the policy had been delivered, and that proper proof of death had been made. *Knights & Ladies of Security* v. *Lewellen,* 159 Ark. 400, 252 S. W. 585; *Grand Lodge of Knights of Pythias* v. *Whitehead,* 87 Ark. 115, 112 S. W. 199; *Eminent Household of Columbian Woodmen* v. *Howle,* 131 Ark. 299, 198 S. W. 286.

The jury found for the plaintiff for the face of the policy, and we are unable to say that the testimony does not support this finding, as it does not appear that such a showing was made that the insured was not in good

health when the policy was delivered that it was arbitrary to find otherwise.

The statutory penalty provided by § 6155, C. & M. Digest, was imposed, and an attorney's fee was assessed, pursuant to the authority of that section, and this action is assigned as error, for the reason, as appellant insists, that it is exempt from the provisions of that section under act 137 of the Acts of 1925 (Acts 1925, page 390).

Act 137 is entitled: "An act providing for stipulated premium insurance companies operating on the stipulated premium plan, and regulating same." Section 16 of this act provides that "all acts or parts of acts repugnant to or in conflict herewith are hereby repealed; and provided, further, that the general insurance laws of this State or any laws governing the organization and control of mutual assessment companies shall not apply to or govern companies organized under this act."

Act 137 applies to appellant company, and the act, which was approved March 7, 1925, was in effect when the policy here sued on was issued, and it is insisted therefore that the provisions of § 6155, C. & M. Digest, do not apply.

We think, however, that counsel misinterprets the purpose and effect of § 16, above quoted, as the purpose of that section was to make the organization and control of companies "operating on the stipulated premium plan" subject to the provisions of that act. Section 6155, C. & M. Digest, does not relate to the organization or control of insurance companies, as that section was passed to require prompt settlement of any liability "in all cases where loss occurs, and the fire, life, health, or accident insurance company liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor," and the provisions of that section apply to the companies named, regardless of the manner in which they may be organized or controlled.

It is finally insisted that the court erred in over-ruling appellant's motion for a continuance on account of the absence of James A. Cooper, a witness subpoenaed by it. The motion for continuance recites that "defendant says that he had a subpoena issued for the above witness about ten days ago, to appear on the 12th day of July, 1927, and that the officer has been unable to serve the same or find the witness." There was no showing, however, as to the location of the witness, or as to when or where he might be found. It was therefore no abuse of discretion on the part of the court to overrule the motion for a continuance.

As no error appears, the judgment will be affirmed.