**STATE MUTUAL LIFE ASSURANCE COMPANY, Appellant,**

v.

**George H. WITTENBERG, Jr., Executor of the Estate of Minnie G. Wittenberg, Deceased, Appellee.**

**No. 15564.**

United States Court of Appeals
Eighth Circuit.

Dec. 13, 1956.

Rehearing Denied Jan. 9, 1957.

G. Thomas Eisele, Little Rock, Ark. (E. L. McHaney, Jr., John M. Lofton, Jr., James M. McHaney, and Owens, McHaney, Lofton & McHaney, Little Rock, Ark., were with him on the brief), for appellant.

Sam Laser, Little Rock, Ark. (Cockrill, Limerick & Laser, Little Rock, Ark., were with him on the brief), for appellee.

Before WOODROUGH, VOGEL and VAN OOSTERHOUT, Circuit Judges.

VOGEL, Circuit Judge.

Minnie G. Wittenberg, widow of George H. Wittenberg, Sr., sought to recover $10,000 as beneficiary under a group life insurance contract issued by the appellant on April 1, 1953. After trial, and pending appeal to this court, Mrs. Wittenberg died, whereupon George H. Wittenberg, Jr., executor of her estate, was substituted as appellee herein.

On February 1, 1953, the appellant issued to the American Institute of Architects a master life insurance policy agreeing to insure certain employees of employers participating in the policy. George H. Wittenberg, Sr., an employee of a participating architectural firm, Wittenberg, Delony and Davidson, applied for coverage under this group policy in March, 1953, and was issued a certificate of insurance (No. 1714) effective April 1, 1953. The contract carried no requirement for a physical examination prior to issuance. There is no dispute

as to Wittenberg being an employee within the meaning of the insurance contract. Appellant does contend, however, that Wittenberg was ineligible to receive benefits due an employee under the following requirement for coverage:

"EMPLOYEES ELIGIBLE. Each employee of a participating Employer shall be eligible for insurance on the date upon which he meets the following requirements:

"(a) he is regularly working for the Employer at least thirty hours a week on a permanent basis;"

The certificate issued to Wittenberg provided:

"This certificate is void if the Employee (1) is not actually at work on the date hereof or (2) is not in a class of employees eligible for insurance under the Group Policies."

On September 4, 1952, prior to the issuance of insurance, (April 1, 1953) Wittenberg suffered a heart attack. In September, 1953, six months after issuance of insurance, Wittenberg filed a claim to recover total and permanent disability benefits from the Union Central Life Insurance Company and Penn Mutual Life Insurance Company under policies issued him years before. Each of these claims stated that Wittenberg became disabled on September 4, 1952. In response to the question, "Have you engaged in any occupation or done any work since your disability began?", Wittenberg answered, "No." If this statement is literally true, it is an apparent contradiction of the representation made to the appellant that Wittenberg was "regularly working" on April 1, 1953, the date of policy issuance. *Appellant, however, makes no point of misrepresentation, in fact, asserts it is not relying thereon.* Other evidence concerning Wittenberg's business activities subsequent to the heart attack is in conflict. All witnesses agreed he did no work prior to January, 1953. Testimony for appellant tended to establish that Wittenberg himself had stated in his disability claims that he never returned to work after September, 1952. Appellee's testimony attempted to show that Wittenberg did return to his office in January, 1953, and worked until April 30, 1953, at which time it was necessary to amputate one of his legs. All witnesses agreed that Wittenberg thereafter performed no work.

The sole issue of fact at the trial was whether George H. Wittenberg, Sr., was regularly working thirty hours a week on a permanent basis at the time the insurance was issued to him. Deciding the issue affirmatively, the jury returned a verdict for appellee. Judgment upon this verdict was entered and this appeal followed.

There is no question but that there was sufficient evidence from which the jury could support its conclusion that Wittenberg was working on a regular basis of thirty hours per week on April 1, 1953. Appellant's quarrel is with certain instructions given the jury and exclusions of evidence which it asserts were valuable in tending to show Wittenberg was not in fact working as claimed.

Appellant's first charge of error on the part of the trial court was an instruction to the jury that the burden was upon the appellant-defendant to prove (a) that George H. Wittenberg was not working regularly thirty hours a week on a permanent basis on April 1, 1953, the effective date of his certificate; and (b) that George H. Wittenberg was not actually at work on April 1, 1953.

■■ A federal court exercising jurisdiction by virtue of diversity of citizenship must, in determining a burden of proof question, apply the law of the state wherein the court is sitting. Erie R. Co. v. Tompkins, 1939, 304 U.S. 64, 58 S.Ct. 817, 87 L.Ed. 1188; Cities Service Oil Co. v. Dunlap, 1939, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196; Fort Dodge Hotel Co. of Fort Dodge v. Bartelt, 8 Cir., 1941, 119 F.2d 253. The question to determine then is whether Arkansas considers burden of proof questions procedural or substantive. Appellant asserts that the Arkansas law is uncertain. The trial judge must have been of the

opinion that under the law of Arkansas questions concerning burden of proof are essentially procedural and therefore governed by the law of the forum. He is supported in that view by St. Louis & San Francisco R. Co. v. Coy, 1914, 113 Ark. 265, 284, 168 S.W. 1106; Huckaby v. St. Louis, I. M. & S. Ry. Co., 1915, 119 Ark. 179, 177 S.W. 923, as well as by a substantial majority of courts in other states which regard burden of proof questions as purely remedial or procedural, as are most questions of evidence so considered. 11 Am.Jur., Conflicts of Laws, § 203; 78 A.L.R. 883. The only exception to the rule that remedial rights are determined by a local law is when the foreign remedy is inseparably interwoven into the cause of action so that to divorce the remedy from the right would defeat the cause of action. Precourt v. Driscoll, 1931, 85 N.H. 280, 157 A. 525, 78 A.L.R. 874. That situation is not present in the instant case. We hold, then, with the trial court that under the law of Arkansas the question of the burden of proof is determined by the law of the forum.

We must next determine whether or not the trial court correctly applied Arkansas law in placing the burden of proof upon the appellant-insurer to show that George H. Wittenberg was not regularly working thirty hours a week on a permanent basis on April 1, 1953.

In support of the proposition that under Arkansas law in a situation like that with which we are here concerned the burden of proof is not upon the insurer, appellant cites to us New York Life Ins. Co. v. Mason, 1921, 151 Ark. 135, 235 S.W. 422, 19 A.L.R. 618, and Atlas Life Ins. Co. v. Bolling, 1932, 186 Ark. 218, 53 S.W.2d 1. In the Mason case, the sole question was whether or not the policy had been delivered, delivery being essential to its effectiveness. It is not in point. Here the policy was issued and delivered. The Bolling case lends support to appellant's contention that where good health was essential at the time of the delivery of the policy the burden of such proof rested upon the insured. The Bolling case, however, cites the Mason case as

authority and does not seem to be in accord with a number of other holdings on Arkansas law. See Woodmen of the World Life Ins. Society v. Reese, 1943, 206 Ark. 530, 176 S.W.2d 708; Aetna Life Ins. Co. v. McAdoo, 8 Cir., 1938, 106 F.2d 618; National Life & Accident Ins. Co. v. Robinson, 1930, 181 Ark. 1, 24 S.W.2d 878; Old American Ins. Co. v. Hartsell, 1928, 176 Ark. 666, 4 S.W. 2d 25; Sovereign Camp, W. O. W. v. Cole, 1936, 192 Ark. 326, 91 S.W.2d 250; Southern National Ins. Co. v. Pillow, 1944, 206 Ark. 769, 177 S.W.2d 763.

In Sovereign Camp, W. O. W. v. Cole, supra, the Arkansas Supreme Court stated, 91 S.W.2d 250:

"The law is well settled in this state that when it is established that a policy of insurance has been duly executed, the premium paid, the policy delivered and proof of death made, a prima facie case is made in behalf of the beneficiary or assignee and the burden then shifts to the insurance company to show that the insured was not in good health at the time of delivery. Old American Insurance Co. v. Hartsell, 176 Ark. 666, 4 S.W. (2d) 25; National Life & Accident Insurance Co. v. Robinson, 181 Ark. 1, 24 S.W.(2d) 878; Knights & Ladies of Security v. Lewellen, 159 Ark. 400, 252 S.W. 585."

Whether the Arkansas Supreme Court intended to overrule Atlas v. Bolling, supra, or simply ignore it we do not know, but in the light of later cited decisions of that court and with regard to the prevailing general law we conclude that the trial court was correct in assuming that the burden of proof is on the insurer. See 46 C.J.S., Insurance, § 1319 b.

In considering these Arkansas cases dealing with "good health" clauses, it should be borne in mind that the question of good health was in no way pertinent to this case and it is by way of analogy that the cases involving "good health" clauses are referred to here. We see no reason for making a distinction on this

basis but only point out that there are no Arkansas decisions indicating where the burden of proof would rest in the precise type of policy here involved.

■ At best, the appellant here has presented doubtful questions concerning Arkansas law. We have repeatedly said that on such questions we will accept the views of the trial judge and that there will be no reversal excepting for clear error. See American Nat. Bank of St. Paul v. Nat. Ind. Co., 8 Cir., 1955, 222 F.2d 513, 519.

■ The second allegation of error is that the jury was instructed that the question of whether Wittenberg was working at least thirty hours a week on a permanent basis related to the time "immediately" prior to the issuance of the policy on April 1, 1953. Appellant centers upon the word "immediately" as restricting the time period in which the jury might consider whether Wittenberg had worked prior to April 1, 1953. That this choice of words is unquestionably fair to appellant is attested to by the application of the American Institute of Architects for group insurance which said:

"8. (A) Is a period of membership in the group to be insured a condition of eligibility for those persons in the group on the effective date of the insurance? No."

The above answer, together with the language of the master policy stating the only condition for insurability was that "he is regularly working * * * at least thirty hours a week on a permanent basis", effectively eliminates any retrospective implication the appellant might like to press. Thus, there is no requirement that Wittenberg had to be working *at any other time* than on the day of the effective date of the insurance or, as the trial court put it, "immediately prior" to the issuance of the policy.

When these instructions are considered in the light of the quoted application and policy provisions, it becomes apparent that the trial court was more fair to appellant than would be required by the terms of its own contract.

■ The third allegation of error is the refusal of the court to give appellant's requested instructions Nos. 5, 8 and 12. The import of these denied instructions is, briefly, that the jury should have been admonished to the effect that regardless of how "regularly" Mr. Wittenberg had been working prior to April 1, 1953, they should not find for appellee unless they should decide it was reasonable to believe on April 1, 1953, that such work would continue on a permanent basis, that is, indefinitely. Again, as with the word "immediately", appellant chooses to engage in a semantical argument over the meaning of "permanent". It is conceded that this objection would be valid except that instruction No. 7 adequately disposed of the objection:

"You are instructed that if the deceased, George H. Wittenberg, prior to the time of his application for the certificate of insurance issued by the defendant Company, was suffering from heart disease, which said disease precluded him from working regularly on a *permanent* basis, then in that event, the certificate of insurance was never in force, and your verdict must be for the defendant." (Emphasis supplied.)

We believe the jury would surmise that the word "permanent" had prospective application as it does in the manner generally understood by laymen as well as lawyers.

■ Appellant's last allegation of error concerns the exclusion by the court of certain written documents and of testimony. We will discuss the exclusions separately. The first was a diagnosis sheet of Mr. Wittenberg's attending physician which was submitted by the employer to the appellant and was attached to the physician's certificate of death. The basis for exclusion was that the diagnosis sheet was privileged. Arkansas has a typical physician-patient privilege statute. § 28–607 Ark.Stats., 1947, Annotated. The statutory provision may be

waived by the patient or, after his death, by his representative or beneficiary. In the absence of a waiver either in the policy or by the beneficiary, the introduction in evidence of a certificate of death given by a physician of the insured does not waive the provisions of the statute against physicians testifying concerning information received in the course of professional employment. Fidelity & Casualty Co. v. Meyer, 1912, 106 Ark. 91, 152 S.W. 995, 44 L.R.A.,N.S., 493. This holding was reaffirmed by this court in Aetna Life Ins. Co. v. McAdoo, supra. See also American National Ins. Co. v. White, 1916, 126 Ark. 483, 191 S.W. 25. As late as 1955 the Supreme Court of Arkansas reiterated the rule in Metropolitan Life Ins. Co. v. Kendall, 1955, 284 S.W.2d 863, 865, stating:

"In similar circumstances the governing rule has been clearly announced by this court in Fidelity & Casualty Co. v. Meyer, 106 Ark. 91, 152 S. W. 995, 999, 44 L.R.A.,N.S., 493, where we said: 'According to the weight of authority, where a policy of insurance does not itself contain a provision for waiver of the privilege, the introduction in evidence of certificate of death given by a physician of the insured does not waive the provisions of the statute against physicians testifying concerning information received in the course of professional employment.' "

Since, under the law of Arkansas, the submission of a certificate of death did not waive the privilege, there was no error in excluding the diagnosis sheet. In any event, the attending physician was called as a witness in behalf of the appellant and testified as to the insured's condition from the time he first examined him up to the time of his death.

■ The second exclusion concerns statements of physicians sent to the Union Central Life Insurance Company and the Penn Mutual Life Insurance Company by Wittenberg in support of his claim for total disability. Here again we find the medical privilege attached to these statements under the authority of Fidelity & Casualty Co. v. Meyer, supra. Neither the Union Central nor the Penn Mutual policies contained any waiver of the privileged contents. Medical information was furnished only as a voluntary act to secure settlement of those two policies. Furthermore, the alleged harm of this exclusion was overcome by later oral testimony from one of the physicians that the disability claims were for a period covering the time Wittenberg was supposed to be working for his architectural firm. The purpose of attempting to introduce the statements was fully accomplished by the oral testimony of the attending physician. If there was error, it was certainly harmless. Rule 61, Federal Rules of Civil Procedure, 28 U.S.C.A.

■ The third exclusion was of letters written by Wittenberg's son, George H. Wittenberg, Jr., to the Union Central Life Insurance Company in furtherance of a disability claim for his father. The court did receive into evidence and there was read to the jury a letter by George H. Wittenberg, Jr., to the Penn Mutual Life Insurance Company dated August 27, 1953, which had particular reference to George H. Wittenberg, Sr.'s physical disability. Part of another letter dealing with disability was read to the jury. Having admitted one letter and part of another, it is not clear from the record the precise reason why the court chose to exclude the remaining letters and the balance of the one partially read excepting on the basis that they contained nothing relevant to the ultimate question to be decided; that is, whether or not Wittenberg was eligible for insurance with the appellant company. An examination of the excluded letters justifies that conclusion, and we accordingly hold that no error was committed.

■ The fourth and final exclusion of evidence deemed error by the appellant is the attempt to show that Wittenberg accepted benefits from Penn Mutual and Union Central pursuant to his disability claims. There is evidence in the record clearly showing that Wittenberg made

claims on the basis of being disabled within the terms and conditions of the policies he carried with Union Central and Penn Mutual, that his attending physician certified to such disability, and that at least one of the said insurance companies determined that Wittenberg was disabled within the terms of its contract. Accordingly, it is hardly realistic for the jurors to have believed that he did not accept the financial benefits of such disability.

Finding no reversible error, the case is affirmed.