IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

SEPTEMBER 1997 SESSION

FILED

October 24, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. NO. 03C01-9606-CC-00238 |
| Appellee, | ) | |
| | ) | ANDERSON COUNTY |
| VS. | ) | |
| | ) | HON. JAMES B. SCOTT, JR., |
| FREDERICK R. PORTER, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Attempted second-degree murder; second-degree murder) |

FOR THE APPELLANT:            FOR THE APPELLEE:


CHARLES L. BEACH                JOHN KNOX WALKUP
365 Market St.                 Attorney General & Reporter
Clinton, TN 37716
(At trial and on appeal)       MARVIN E. CLEMENTS, JR.
                               Asst. Attorney General
DEBORAH MURPHY BEACH           450 James Robertson Pkwy.
365 Market St.                 Nashville, TN 37243-0493
Clinton, TN 37716
        (At trial)             ROBERT L. JOLLEY, JR.
                               Special Prosecutor
DAVID HILL                     P. O. Box 1468
301 E. Broadway                Knoxville, TN 37901-1468
Newport, TN 37821-3105
        (At trial)


OPINION FILED:_____



AFFIRMED


JOHN H. PEAY,
Judge

**O P I N I O N**

The defendant was charged with the premeditated murder of Gerald Brown, the felony murder of Gerald Brown, and the attempted premeditated murder of Jerome Anderson. After a jury trial, he was convicted of the second-degree murder of Gerald Brown and attempted second-degree murder of Jerome Anderson; following the verdict, the trial court dismissed the charge of felony murder. After a hearing, the trial court sentenced the defendant as a Range I standard offender to twenty-five years incarceration for the murder offense and twelve years incarceration on the attempted murder offense. The sentences were run consecutively. In this direct appeal, the defendant raises the following issues:

1. The sufficiency of the evidence;

2. Whether the trial court erred in admitting the defendant's statement;

3. Whether the trial court should have granted a mistrial after hearing two jurors discussing a weapon;

4. Improper prosecutorial argument to the jury;

5. Whether the trial court erred in refusing to admit proffered defense evidence which would have "impeached the integrity of the prosecution;" and

6. The propriety of his sentence.

Upon our review of the record, we find no merit to any of the defendant's issues and affirm the judgment below.

On the evening of February 26, 1993, numerous persons had gathered in an area near the Scarboro Community Center in Oak Ridge, Tennessee. An argument broke out between Jerome Anderson, Andre Porter and Robert Smith. During the course of the argument, Anderson pulled out a pistol and shot three or four times at Andre Porter, causing a single bullet wound to Porter's neck. Following these shots, Anderson and Smith began running from the scene toward the Community Center.

2

The defendant was in the vicinity of the argument; Porter was his cousin. Several eyewitnesses testified that, after Anderson shot Porter, the defendant pulled a pistol and began shooting toward the direction in which Anderson and Smith were running. Anderson testified that he had looked back and seen the defendant shooting at him. Gerald Brown was proceeding in the same direction as Anderson and Smith, but on a path that put him between them and the defendant. He was killed by a single gunshot wound with a nine millimeter bullet. Witnesses testified that the defendant had shot numerous times; the police later found ten nine millimeter shell casings in the area in which the defendant was alleged to have been standing while he was shooting. The weapon from which the fatal bullet was fired was not recovered.

The defendant did not testify. However, during the investigation of Brown's death, he made a voluntary statement to the police which was admitted into evidence. This statement included the defendant's assertion that, "When I heard and saw the two shots fired at my cousin, I looked and saw that [Anderson] was fixing to try and shoot me. So when I proceeded to run he shot once at me and then I heard many other shots as I was running." Nowhere in his statement to the police did the defendant admit that he had fired any shots. However, Angela Brown, the murder victim's sister, testified that she had spoken with the defendant over the phone after her brother was killed, and that he had told her that he hadn't shot at her brother but had been "shooting up in the air." Derrick Smith testified that the defendant had offered him money to change his statement in which he reported having seen the defendant pull a gun.

The defendant first contends that the evidence is not sufficient to support his convictions for attempted second-degree murder and second-degree murder because the weapon was never recovered (and was, accordingly, never linked to him) and because there was proof that other people in the same vicinity were or may have been

3

armed.  He further contends that the proof demonstrates, at most, that  he is guilty of attempted voluntary manslaughter and voluntary manslaughter.  We disagree.

When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court.  Cabbage, 571 S.W.2d 832, 835.  A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence.  State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

The State adduced testimony from numerous eyewitnesses that they had seen the defendant shooting multiple times toward the direction in which Anderson and Smith were running.  Anderson himself testified that he had seen the defendant shooting at him as he ran.  Additional testimony and physical evidence, including blood splatters and the location of Brown's body, placed Brown between the defendant and his target, in the line of fire. Brown was killed by a gunshot wound. That the police never recovered the murder weapon is not fatal to the State's case.  That others in the area may have been armed is not fatal to the State's case. The evidence was sufficient to support a jury

4

finding that the defendant shot and killed Gerald Brown in his attempts to shoot and kill Anderson.

With respect to Brown's homicide, the jury was instructed on first-degree murder (both premeditated and felony murder) and the lesser offenses of second-degree murder, voluntary manslaughter and criminally negligent homicide. It returned a verdict of second-degree murder. Similarly, with respect to the attempt crime against Anderson, the jury was instructed on attempted premeditated murder and the lesser offenses of attempted second-degree murder, attempted voluntary manslaughter and attempted criminally negligent homicide. It returned a verdict of attempted second-degree murder.

Second-degree murder is defined as "A knowing killing of another." T.C.A. § 39-13-210(a)(1) (1991). "Knowing" is in turn defined as referring "to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct [and] the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-302(b). A person commits an attempted second-degree murder when he knowingly acts with the intent to kill his target and his actions constitute "a substantial step toward the commission" of the murder. T.C.A. § 39-12-101(a)(3). Proof that a person has deliberately aimed a pistol and shot several times at his intended victim is sufficient to support a conviction for attempted second-degree murder. In this case, Anderson testified that, as he had run away from his confrontation with Porter, he looked back and saw the defendant shooting at him. Jamman T. Booker also testified that he had seen the defendant shooting "toward the way that [Anderson] and [Smith] was running." Two other eyewitnesses also testified that they had seen the defendant shooting his pistol in the direction toward which Anderson had been running. This was sufficient evidence on which to support a conviction for the attempted second-degree murder of Anderson.

5

With respect to the defendant's contention that the evidence supports only a conviction of the attempted voluntary manslaughter of Anderson, we first note that voluntary manslaughter is the "intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." T.C.A. § 39-13-211(a). Although the defendant did not testify, there was proof that he was Andre Porter's cousin, and Anderson testified that he thought the defendant was shooting at him "Because [he] shot his cousin." Therefore, the defendant now argues, any shots he took at Anderson were the result of Anderson's attack on his cousin and he was therefore shooting "in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner."

As this Court has previously stated, however, "Whether the [defendant's] acts constitute a 'knowing killing' (second degree murder) or a killing due to 'adequate provocation' (voluntary manslaughter) is a question for the jury." State v. Johnson, 909 S.W.2d 461, 464 (Tenn. Crim. App. 1995). In this case, the jury obviously determined that the defendant had attempted to commit a knowing killing which was not the result of adequate provocation and/or did not involve such provocation as to lead a reasonable person to act in an irrational manner. This was the jury's prerogative. The evidence being sufficient to support its verdict that the defendant attempted to commit a knowing killing, this issue is without merit.

With respect to his conviction for second-degree murder, we first note that the defendant was convicted of Brown's homicide on the basis of the doctrine of transferred intent. That is, the level of culpability which the defendant demonstrated in his attempt to kill Anderson is transferred to his actual killing of Brown. See State v. Summerall, 926 S.W.2d 272, 275 (Tenn. Crim. App. 1995). Because the jury convicted

6

the defendant of knowingly attempting to kill Anderson, the doctrine of transferred intent permits a finding that the defendant knowingly killed Brown and therefore committed second-degree murder. The evidence is sufficient to support this verdict. As set forth above, the State's proof demonstrated that the defendant fired his gun numerous times in Anderson's direction. The proof further demonstrated that Brown was located in the line of fire between the defendant and Anderson. The logical inference supported by the proof was that a bullet intended for Anderson struck and killed Brown. The jury determined that the defendant's actions were not committed in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner. The jury's verdict of second-degree murder being supported by the proof, this issue is without merit.

In his next issue, the defendant asserts that the trial court erred when it allowed the State to introduce into evidence the voluntary statement he made to the police prior to his arrest. The defendant bases his assertion on the grounds that his statement was "entirely exculpatory." As authority, the defendant cites us to a single case, State v. Robert Brian Chaffin, No. 01C01-9001-CR-00001, Overton County (Tenn. Crim. App. filed March 21, 1991, at Nashville). We find this case to be inapposite, however, because it dealt with the defendant's attempt to introduce his own prior and self-serving statement. Here, the statement was being offered by the State against the defendant.

In his statement, the defendant told the police that he had been present at the argument between Anderson and Porter, that Anderson had subsequently shot at him and that he had run away. To the extent that this statement was offered to prove that the defendant had been at the scene of the crimes, it is an admission by a party-opponent and therefore admissible as an exception to the hearsay rule. See Tenn. R. Evid.

7

803(1.2).

Moreover, while his statement contains no explicit denial of having shot a gun himself, the defendant's explanation to the police of what happened contains no reference to his having fired shots and paints a picture of himself as victim rather than aggressor. In minimizing his role in the crimes, the statement is consistent with Angela Brown's testimony that the defendant had told her he had shot into the air, and with Derrick Smith's testimony that the defendant had offered him money to change his statement. Thus, in addition to being offered in order to prove the defendant's presence at the scene of the crime, the statement was also offered as proof that the defendant had tried to cover up the extent of his involvement in the shootings. In that respect, the proof was relevant and therefore admissible.[1] Tenn. R. Evid. 402. This issue is without merit.

In his third issue, the defendant contends that the trial court should have granted a mistrial after hearing two jurors discussing a weapon prior to the case being submitted to the jury. The record reveals that, during a recess, the trial judge overheard two jurors conversing with something being said about a "nine millimeter." Because a nine millimeter weapon had been introduced into evidence earlier in the trial, the court was concerned that the jurors were discussing the case prematurely. Accordingly, the court questioned the two jurors about their conversation, out of the presence of the remainder of the jury, asking them if they had been discussing "anything about the evidence in this case?" One of the jurors responded, "Just trying to clarify a point. He misunderstood a point. I apologize for that." Defense counsel then moved for a mistrial.

---

[1]Offered for this purpose, the defendant's prior statement was not hearsay because it was not being offered to prove the truth of the matter asserted (or not asserted) therein. See Tenn. R. Evid. 801(c).

8

The court continued to question the two jurors, asking if "anything [had been] concluded in that respect?" Both jurors said "no" and one of the jurors stated that he "was trying to explain that, you know, we couldn't discuss that part." The court then asked the other juror if they had been "saying we can't discuss about a 9 millimeter gun or something?" The juror answered, "Yes, sir." The court then asked, "And no discussion was taking, had taken place?" and the other juror said, "No." The court then stated to both jurors, "You can go forward without violating your oaths, is that what you're telling me?" to which both jurors answered in the affirmative. The court overruled the motion for mistrial.

As this Court recently stated in State v. Williams,

> The decision to grant a mistrial is within the sound discretion of the trial court and such decision will not be overturned absent an abuse of discretion. A mistrial is usually appropriate in a criminal case only where there is a 'manifest necessity.' The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict. The burden of establishing a 'manifest necessity' lies with the appellant.

929 S.W. 2d 385, 388 (Tenn. Crim. App. 1996) (citations omitted). The defendant has failed utterly to demonstrate a manifest necessity for a new trial arising from what the record demonstrates to have been a rebuffed inquiry from one juror to another about an item of evidence. We see no abuse of discretion by the trial court in this case in its denial of the defendant's motion for a mistrial. This issue is without merit.

The defendant next contends that he was denied a fair trial as a result of prosecutorial misconduct during closing argument. Specifically, he claims that the prosecuting attorney stated during closing argument that he was a liar and that the jury had to find him guilty in order for our justice system to work. The defendant further claims that the prosecuting attorney made statements not based on the evidence.

9

We have carefully examined the prosecuting attorney's closing arguments as well as defense counsel's objections thereto and the trial court's rulings and instructions following objections. The trial judge has wide discretion in controlling the argument of counsel. That discretion will not be interfered with on appeal in the absence of an abuse thereof. Smith v. State, 527 S.W.2d 737, 739 (Tenn. 1975). We find no abuse of discretion in this matter, nor do we find any errors stemming from the State's argument by which the defendant was denied a fair trial. This issue is without merit.

For his fifth issue, the defendant alleges that the trial court erred when it refused to allow him to introduce "evidence that District Attorney General James Ramsey had information that there were problems with the handling of evidence and harassment by the Oak Ridge Police Department." The record contains a copy of a letter from General Ramsey to the Deputy Director of the Tennessee Bureau of Investigation which refers to certain complaints voiced by the community of which the defendant was a member against the local police department, including "harassment, fabrication of evidence [and] theft of evidence." This letter was included in the record as an offer of proof. The trial court ruled that it was not admissible into evidence under Tennessee Rule of Evidence 616. The trial court was correct.

Tennessee Rule of Evidence 616 provides that, "A party may offer evidence by cross-examination, extrinsic evidence, or both, that a witness is biased in favor of or prejudiced against a party or another witness." The letter does not establish that any of the State's witnesses in this case were either biased in favor of the State (or any of its other witnesses) or prejudiced against the defendant or any of his witnesses. Nor did the defendant develop any proof that the police department harassed him with respect to this case, or that it or any of its officers fabricated or stole any evidence relevant to this case.

10

Thus, not only is the letter not admissible under Rule 616, it appears not to have any relevance with respect to this particular case. Evidence that is not relevant is not admissible. Tenn. R. Evid. 402. This issue is without merit.

In his final issue, the defendant complains about his sentences. He was sentenced as a Range I standard offender to twenty-five years for the second-degree murder conviction, a Class A felony, and to twelve years for the attempted second-degree murder conviction, a Class B felony. These were the maximum sentences for both offenses. See T.C.A. § 40-35-112(a)(1) & (2). The trial court also ordered the sentences to be served consecutively. The defendant now contends that the trial court erred in finding no mitigating factors, in applying certain enhancement factors, and in ordering consecutive sentences.

When a defendant complains of his or her sentence, we must conduct a de novo review with a presumption of correctness. T.C.A. § 40-35-401(d). The burden of showing that the sentence is improper is upon the appealing party. T.C.A. § 40-35-401(d) Sentencing Commission Comments. This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

A portion of the Sentencing Reform Act of 1989, codified at T.C.A. § 40-35-210, established a number of specific procedures to be followed in sentencing. This section mandates the court's consideration of the following:

> (1) The evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing

11

alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in his own behalf about sentencing.

T.C.A. § 40-35-210.

In addition, this section provides that the minimum sentence within the range is the presumptive sentence.[2] If there are enhancing and mitigating factors, the court must start at the minimum sentence in the range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. If there are no mitigating factors, the court may set the sentence above the minimum in that range but still within the range. The weight to be given each factor is left to the discretion of the trial judge. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

The Act further provides that "[w]henever the court imposes a sentence, it shall place on the record either orally or in writing, what enhancement or mitigating factors it found, if any, as well as findings of fact as required by § 40-35-209." T.C.A. § 40-35-210(f) (emphasis added). Because of the importance of enhancing and mitigating factors under the sentencing guidelines, even the absence of these factors must be recorded if none are found. T.C.A. § 40-35-210 comment. These findings by the trial judge must be recorded in order to allow an adequate review on appeal.

The defendant contends that the trial court should have found two mitigating

---

[2]This section was amended in 1995 to require trial judges to consider the presumptive sentence for a Class A felony to be the mid-point range. See T.C.A. § 40-35-210(c) (Supp. 1995). Because these offenses occurred in 1993, however, the defendant is entitled to be sentenced under prior law which provided that the presumptive sentence was the minimum sentence in the range for all classes of felonies. T.C.A. § 40-35-210(c) (1990).

12

factors. He argues that he acted under strong provocation and that substantial grounds existed which tended to excuse or justify his criminal conduct. T.C.A. § 40-35-113(2) & (3). The trial judge refused to apply these factors, asking, "What was the provocation to take a life? What was the provocation to take a gun and spray it across a parking lot? How could that possibly be a justification for what occurred here?"

In his appellate brief, the defendant fails to offer any reasons as to why these mitigating factors should have been applied. Accordingly, this issue has been waived. Tenn. Crim. App. R. 10(b). Furthermore, although the record indicates that the defendant was Andre Porter's cousin, and therefore supports the inference that he was shooting at Anderson in retaliation for Anderson's having shot Porter, we do not think this is an appropriate reason to apply either of these two mitigating factors. To do so would simply encourage future vigilante acts of this nature. We think that the trial court was correct in refusing to apply these mitigating factors. This issue is without merit.

The defendant next argues that the trial court erred in its application of two enhancement factors. The trial court found that the following enhancement factors applied to each conviction: that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; that he has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; that he possessed or employed a firearm during the commission of the crime; that he had no hesitation about committing the crime when the risk to human life was high; and that the crime was committed under circumstances under which the potential for bodily injury to a victim was great. T.C.A. § 40-35-114(1), (8), (9), (10) and (16). Factor (12), that during the commission of the offense, the defendant willfully inflicted bodily injury upon another

13

person, or the actions of the defendant resulted in the death or serious bodily injury to a victim or a person other than the intended victim, was also applied to the attempted second-degree murder conviction.[3] Of these factors, the defendant argues only that factors (12) and (16) were improperly applied.

In State v. Makoka, 885 S.W.2d 366, 373 (Tenn. Crim. App. 1994), this Court ruled that the sentence for an attempted murder conviction was properly enhanced by the factor for no hesitation about committing the crime when the risk to human life was high, T.C.A. § 40-35-114(10). The Court recognized that this factor should not be applied when the only person subjected to the risk is the intended victim, but distinguished those situations where other people present are subjected to this risk. In those situations, the factor is not "inherent" and may properly be applied. Makoka, 885 S.W.2d at 373. Similarly, we find the same reasoning is appropriate and supports the application of factor (16) to both of the defendant's convictions in this case; that is, the crimes were committed under circumstances in which the potential for bodily injury to a victim was great. Although all murders and attempted murders involve this potential for the intended victim, they do not all involve this potential for other persons. In this case, there was great potential for bodily injury to at least Smith in addition to Anderson, the intended target.

Nor do we find any error in the trial court's application of factor (12) -- that the defendant's actions resulted in the death or serious bodily injury to a victim or person other than the intended victim -- to the attempted second-degree murder conviction. Not every attempted second-degree murder results in the death of an innocent bystander. Thus, this factor is not an essential element of the offense. See State v. Freeman, 943

---

[3]The trial court appeared to recognize that factor (12) could not apply to the conviction for second-degree murder. The court's verbal ruling is not entirely clear. It is clear, however, that in the State's notice of enhancement factors, it requested that factors (1), (8), (9), (10) and (16) apply to both convictions and that the additional factor (12) be applied to the attempted second-degree murder conviction.

14

S.W.2d 25, 32 (Tenn. Crim. App. 1996) ("because bodily injury is not an essential element of the offense of attempted second-degree murder, the trial court properly enhanced the defendant's sentence for that offense with regard to the victim who was actually wounded.")  This issue is without merit.

These multiple enhancement factors, combined with the absence of any mitigating factors, are more than sufficient to sentence the defendant at the top of the range for each conviction.  It is well-settled that the weight given to enhancement factors is left to the discretion of the trial court.  State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).  Finding no abuse of discretion, we affirm the length of the defendant's sentences.

In his final argument, the defendant contends that the trial court erred when it ordered him to serve his sentences consecutively.  Our Code provides for the imposition of consecutive sentences where, among other things, the defendant is "an offender whose record of criminal activity is extensive" or where the defendant is "a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high."  T.C.A. § 40-35-115(b)(2) & (4).  This defendant, who was twenty-four years old at the time of sentencing, has a criminal history including convictions for a federal drug offense,[4] two assaults, two resisting arrest offenses, one assault and battery, and one weapons offense.  He has also been convicted of twelve traffic offenses and several other misdemeanors.  These numerous convictions lead us to conclude that the defendant is an offender whose record of criminal activity is extensive.  The instant crimes also lead us to conclude that the defendant is a dangerous offender whose behavior indicates little

---

[4]He was convicted of this charge while on bond for the current charges.

15

or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high. In other words, the defendant meets the statutory criteria for consecutive sentences.

In addition to considering the statute, however, we must consider the two Tennessee Supreme Court opinions which the consecutive sentencing statute essentially codified: Gray v. State, 538 S.W.2d 391 (Tenn. 1976) and State v. Taylor, 739 S.W.2d 227 (Tenn. 1987). In Gray, our Supreme Court stated that "a consecutive sentence should be imposed only after a finding by the trial judge that confinement for such a term is necessary in order to protect the public from further criminal conduct by the defendant." Gray, 538 S.W.2d at 393. Thus, the defendant's potential for rehabilitation is a significant factor under the Gray rationale. Id. Similarly, in Taylor, our Supreme Court stated that consecutive sentences should not be routinely imposed and that the aggregate sentence "must be reasonably related to the severity of the offenses involved." Taylor, 739 S.W.2d at 230. Taken together, these two cases establish "that consecutive sentences cannot be imposed unless the terms reasonably relate to the severity of the offenses committed and are necessary in order to protect the public from further serious criminal conduct by the defendant." State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995).

In this case the trial court found the defendant to be "a threat to society" and determined that he should serve his sentences consecutively. Given the defendant's criminal history and his behavior in committing the instant crimes, we agree with the trial court and find that these sentences should be run consecutively in order to protect the public from further serious criminal conduct by the defendant. Moreover, we note that the offenses of second-degree murder and attempted second-degree murder are among the most severe offenses that can be committed. We find therefore that the terms of

16

imprisonment reasonably relate to the severity of the defendant's crimes. The facts and circumstances of these crimes and the defendant's past and instant behavior satisfy the criteria for consecutive sentencing set forth in both the statute and the case law. This issue is without merit.

The trial court having committed no reversible error, the judgment below is affirmed.

_____
JOHN H. PEAY, Judge

CONCUR:

_____
DAVID G. HAYES, Judge

_____
WILLIAM M. BARKER, Judge

**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**
**AT KNOXVILLE**
**SEPTEMBER SESSION, 1997**

**FILED**

**October 24, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **No. 03C01-9606-CC-00238** |
| **Appellee** | ) | |
| | ) | **ANDERSON COUNTY** |
| **vs.** | ) | |
| | ) | **Hon. JAMES B. SCOTT, JR., Judge** |

**FREDERICK R. PORTER,** )
                        )    **(Attempted second-degree murder;**
    **Appellant**    )    **second-degree murder)**

---

### SEPARATE CONCURRING

Although I concur with the majority in affirming the appellant's conviction, I write separately to note my concern with the opinion's application of the doctrine of "transferred intent." The majority opines that the evidence is sufficient to support a verdict of second degree murder based upon transferred intent. First, I find that application of "transferred intent" to this case is unnecessary. Although not having an actual intent to kill another, one may be found guilty of second degree murder, a knowing killing of another, if that person is consciously aware of the nature of his conduct and that the conduct is reasonably certain to cause death. Tenn. Code Ann. § 39-11-302(b). Clearly, a rational jury could infer that the appellant's conduct in repeatedly firing a nine millimeter weapon into a crowd of people is reasonably certain to cause death. The proof establishes the essential elements of second degree murder beyond a reasonable doubt. No further analysis is necessary.

Also of concern is the question of whether "transferred intent" is a recognizable doctrine under this state's current law. In Sullivan v. State, 121 S.W.2d 535, 537 (Tenn. 1938), our supreme court held that the doctrine of "transferred intent" applies only to cases involving first degree felony murder. The court noted that Tennessee, representing the minority view, has never acknowledged the doctrine of "transferred intent." Id. See also Bratton, 29 Tenn. 103 10 Humph. 103 (1849) (holding that the doctrine of "transferred intent" is not compatible with the plain terms of the statute"). C.f. State v. Harper, 334 S.W.2d 933, 936 (Tenn. 1960) (affirming a second degree murder conviction upon a finding of malice and, in dictum, announced that the holding would have been the same under transferred intent.); Burton v. State, 394 S.W.2d 873 (Tenn. 1965).

Moreover, it is noted that, since the adoption of the 1989 CRIMINAL CODE, no supreme court decision has addressed the issue of whether this state recognizes the doctrine of "transferred intent" under the current code. Our Criminal Code, in large part an adoption of the MODEL PENAL CODE, did not explicitly adopt the MODEL CODE'S approach which would have, in effect, incorporated "transferred intent." See MODEL PENAL CODE § 2.03. Generally, it is presumed that where the legislature includes language in one section, but omits it in another section of the same act, the legislature acted purposefully in the subject excluded. Additionally, the majority cites as authority this court's decision in State v. Summerall, 926 S.W.2d 272, 275 (Tenn. Crim. App. 1995). I do not find Summerall dispositive of this issue as the opinion merely summarily adopts transferred intent without discussion of our supreme court's conflicting decision in Sullivan. See State v. Millen, (No. 02C01-9602-CR-00049 (Tenn. Crim. App. at Jackson, Mar. 7, 1996).

For the foregoing reasons, I find application of the doctrine of transferred intent unnecessary.


_____
DAVID G. HAYES, Judge